E-FILED
Tuesday, 21 July, 2020  02:53:24 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRANDON DEVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18-CV-3258 |
| | ) | |
| MICHELLE PARA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**RICHARD MILLS, U.S. DISTRICT JUDGE.**

The Plaintiff—Brandon Devers--suffered a fifth metacarpal fracture to his right hand during a physical altercation in the Adams County Jail, Quincy, Illinois, in October 2016.

This case is primarily about the 20 days it took for Plaintiff to receive any medical attention for that fracture.

Only one Defendant remains—Defendant Michelle Para.

The other Defendants have settled.

Defendant Para moves for summary judgment and it is granted.

Plaintiff offers no evidence to dispute Defendant Para's averment that she told a correctional officer on the day Defendant

Para learned of the injury that Plaintiff would need to be taken to the emergency room and then left that task to the correctional officer per protocol. Defendant Para did not follow up to ensure that the emergency room visit occurred (it did not), but Plaintiff offers no evidence to suggest that was Defendant Para's responsibility.

**Facts**

These facts are set forth in the light most favorable to Plaintiff, resolving material disputes in Plaintiff's favor and construing reasonable inferences in Plaintiff's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In October 2016, Plaintiff was a pretrial detainee in the Adams County Jail. Plaintiff was involved in a physical altercation sometime between October 14, 2016 and October 18, 2016, and suffered an injury to his right hand. Defendant Para, then a certified medical assistant employed by Shaw Chiropractic and Wellness Center, provided medical care and treatment to jail detainees pursuant to a contract between her employer and the jail. Her duties included treating minor injuries, referring serious

injuries for outside treatment, and coordinating medical appointments outside the jail.  [Defs.' Undisputed Fact 3.]

On October 19, 2016, Defendant Para learned that Plaintiff's hand was injured.  This knowledge came from two sources, (1) an unknown officer's oral report and (2) a medical request from Plaintiff.  Plaintiff wrote the medical request to Defendant Para using the jail's computerized system available at a kiosk:  "BROKEN BONES IN HAND AND WRIST.  NEED XRAYS.  MAJOR BRUSING [sic]." [Resident Request Report, d/e 50-1, p. 5.]  That same day, Defendant Para responded in writing through the kiosk, "When and how did this happen?"  Id.  Plaintiff did not respond to that question, but Plaintiff would have had to check the kiosk to see Defendant Para's question, and it is not clear whether Plaintiff would have understood that he needed to respond or do anything further to obtain medical attention.  The parties do not dispute that Defendant Para did not speak to or examine Plaintiff in response to this medical request.[1]

---

[1] Defendant Para's interrogatory response states that she first learned of Plaintiff's injury "when, on an unknown date and time, Plaintiff exclaimed the same to her, briefly and without context, in passing in a hallway during Plaintiff's transport."  (Def. Para's Answer to Interr. 3, d/e 50-1, p. 56.]  This contradicts Defendants Para's averment that she first learned of the injury through Plaintiff's first medical request and a correctional officer's report on October 19,

Despite not examining Plaintiff, Defendant Para maintains

that she told a correctional officer on October 19, 2016 to arrange

for Plaintiff's transfer to the emergency room:

> On or about October 19, 2016, I told a correctional
> officer, name unknown, that it was unlikely that I would
> be able to diagnose a break in Mr. Devers's hand on
> physical exam alone.  Therefore, I told the corrections
> officer Mr. Devers would need to be transferred to the
> emergency department for his injuries.

[Para Aff. ¶ 5.]  According to Defendant Para, her responsibility

ended there.  Defendant Para avers that, pursuant to jail

protocol, "if a detainee requires the services of an emergency

department, I am obligated to report to any available

corrections officer the need to transport the detainee.  Once

that recommendation is made, the corrections officer

coordinates and schedules the transport of the detainee,

contingent upon the jail's staffing and schedule."  [Para Aff. ¶

6.]  Defendant Para did not follow up to determine whether

Plaintiff had been taken the emergency room or check on

Plaintiff's condition.

---

2016.  However, Plaintiff does not dispute that Defendant Para became aware of the injury on
October 19.  The hallway incident appeared to have occurred on November 4, 2016.

Plaintiff was not taken to the emergency room and received no medical attention in response to his first request. On November 4, 2016, Plaintiff filed a second request for medical care through the kiosk:

> STILL NO MEDICAL ATTENTION FOR MY HAND.  BEEN 3 WEEKS.  SWELLING STILL CAN NOT PUT ANY WEIGHT ON IT.  PAIN SEVEARE [sic].  WILL GO ON HUNGER STRIKE IF IM [sic] NOT TAKEN TO DOCTOR BY TUEDAY MORNING.  11 08 2016.  I ALSO WANT MONEY DAMAGES FOR PAIN AND SUFFERNG DO TO DUE [sic] NEGLECT FROM NURSE AND CHAD DOWNS WHO HAVE BEEN AWARE OF MY MEDICAL CONDITION FOR 3 WEEKS NOW.

[50-1, p. 5.]  Defendant Para responded through the kiosk, "You are going to be taken to get an xray done.  I have not been neglecting you.  We have been VERY short staffed.  I will get you there asap."  Id.  At some point on this same day (November 4, 2016), Defendant Para happened to pass Plaintiff in the hallway, where Defendant Para saw Plaintiff's hand. Defendant Para avers that when she saw Plaintiff's swollen and bruised hand during their hallway encounter, she informed Sergeant Downs that Plaintiff needed to be taken to the emergency room.  Other than what appeared to be a chance encounter, Defendant Para did not visit Plaintiff to

examine his hand in response to Plaintiff's medical requests or call Plaintiff into the nurse's office for an examination.

Plaintiff was not taken to the emergency room until November 8, 2016, four days after his second request and the hallway encounter, and 20 days after Plaintiff's first medical request.  There, Plaintiff was diagnosed with a "mildly displaced and angulated fracture of the fifth metacarpal base with suspected extension to the carpometacarpal joint," that is, "a fracture that extended into the joint that has a minimal amount of separation that can be seen on the x-ray."  (Pl.'s Add'tl Material Fact 10, quoting Dr. Fynn-Thompson Dep. p. 27.]  Plaintiff received a splint.

On November 14, 2016, Plaintiff was taken for an appointment with a nurse practitioner at Quincy Medical Group, who gave Plaintiff a Toradol shot for pain and referred Plaintiff to a hand specialist, Dr. Fynn-Thompson.  [Pl.'s Dep. 47.][2]  Plaintiff asserts that the appointment was made with Dr. Fynn-Thompson for the next day, November 15, and then cancelled by Defendant Para and rescheduled for the next

---

[2] Plaintiff's medical records have not been submitted, but there does not appear to be a dispute about content of those records.

week on November 21, 2016.  [Pl.'s Dep. pp. 48-49.]

Defendant Para points out that Plaintiff has no evidence that

Defendant Para was responsible for canceling the

appointment, but Defendant Para does not explain why this

appointment was rescheduled.  The dispute is immaterial

because rescheduling an appointment for one week later

would not be grounds for a constitutional claim.

The hand specialist (Dr. Fynn-Thompson] had Plaintiff

fitted with a different splint to be worn until the injury was no

longer tender and instructed Plaintiff to take over the counter

pain medicine as needed.  Plaintiff was not taken for a follow-

up with Dr. Fynn-Thompson during the remainder of Plaintiff's

detention in the jail.  [Flynn-Thompson Dep. p. 20.]  However,

Plaintiff's detention in the jail lasted only 10 more days.

Plaintiff was transferred to Western Illinois Correctional Center

on December 1, 2016.

Dr. Fynn-Thompson saw Plaintiff again in May 2018.  Dr.

Fynn-Thompson testified in his deposition that if he had seen

Plaintiff in a follow-up visit in the weeks after the first

appointment, he might have had Plaintiff wear the splint

longer.  [Fynn-Thompson Dep. pp. 21-22.]  Dr. Flynn-Thompson also stated that he would have given the same treatment if he had seen Plaintiff when Plaintiff was first injured.  Id. at p. 20.

## Analysis

To survive summary judgment against Defendant Para, Plaintiff must have evidence that would allow a reasonable juror to find that (1) Plaintiff had an objectively serious medical need; (2) the lack of medical attention for 20 days was objectively unreasonable; (3) Defendant Para caused the lack of medical attention; and, (4) Defendant Para acted "'purposefully, knowingly, or, . . . recklessly.'"  Turner v. Paul, 953 F.3d 1011 (7th Cir. 2020)(*quoting* Miranda v. Cnty. of Lake,* 900 F.3d 335, 352 (7th Cir. 2018).  Negligence or gross negligence is not enough.  Id.  Summary judgment is mandated for Defendant Para if no reasonable juror could find against Defendant Para.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A reasonable juror could conclude that Plaintiff's injury was objectively serious and that delaying medical attention for 20 days was objectively unreasonable.  *See, e.g.,* Conley v. Birch, 796 F.3d

742 (7th Cir. 2015)(reversing summary judgment for prison doctor where doctor took five days to order x-ray for broken hand).  The question is whether a reasonable juror could find that Defendant Para purposefully, knowingly, or recklessly caused the delay.

Plaintiff offers no admissible evidence to dispute Defendant Para's averment that, if a detainee needed emergency room services, her role was to inform a correctional officer and leave the scheduling and transport to the officer.  Plaintiff also does not dispute Defendant Para's averment that Defendant Para told a correctional officer on the day Defendant Para learned of Plaintiff's injury (October 19, 2016) that Plaintiff needed to go to the emergency room.

Plaintiff contends that Defendant Para states only that she told the officer that Plaintiff would *likely* need to go to the emergency room, not that Plaintiff *did* need to go to the emergency room.  But Defendant Para's affidavit is clear:  she told the corrections officer that Plaintiff needed to go to the emergency room because it was unlikely that Defendant Para would be able to determine if there was a fracture.  [Def. Para Aff. ¶ 6: "[I]t was unlikely that I would be able to diagnose a break in Mr. Devers's

hand on physical exam alone.  Therefore, I told the corrections
officer Mr. Devers would need to be transferred to the emergency
department for his injuries."]

A reasonable juror could wonder why Defendant Para did not
even look at Plaintiff's hand before telling the correctional officer an
emergency room visit was needed.  The answer to that question is
immaterial, though.  Plaintiff does not dispute that he needed to go
to the emergency room, and Defendant Para started that process.
Defendant Para does not address whether she followed up to see if
Plaintiff had been taken to the emergency room or whether she
knew that Plaintiff had not been taken, but her silence does not
create a material dispute about whose job it was to ensure that
Plaintiff was taken to the hospital.  On this record, that job was the
correctional officer's, not Defendant Para's.  *See* Turner v. Paul, 953
F.3d 1011, 1016 (7th Cir. 2020)(affirming summary judgment on
year-long delay of nasal surgery for detainee's broken nose where
defendants did not have authority to schedule the surgery)
("Because the medical defendants had no control over the
scheduling of the appointments, Turner cannot claim that their

failure to schedule him for surgery, or their failure to nag the residents, constituted objectively unreasonable conduct.")

A reasonable juror might also wonder why the correctional officer did not arrange for a transport to the hospital after Defendant Para's first instruction to the officer.  Plaintiff's theory, at least in his complaint, was that the delay was intentional, to pressure him to cooperate in the investigation of the fight.  Plaintiff alleged that Defendant Sergeant McGee told Plaintiff that jail policy was to not provide medical treatment for injuries from a fight. (Compl. ¶ 12.)  Plaintiff further alleged that Defendant Downs (the Jail Administrator) told Plaintiff that Plaintiff would not be allowed to go to the hospital unless he provided the names of the inmates in the fight.  [Compl. ¶ 17; Pl.'s Dep at 81.]  We are left to speculate why officers did not transport Plaintiff sooner, but the answer is immaterial because Plaintiff settled with those officers.  The point is that no evidence in this record allows a reasonable inference that the delays were attributable to Defendant Para, the sole remaining Defendant.

Plaintiff argues that Defendant Para's failure to examine Plaintiff, prescribe pain medicine, or splint Plaintiff's injury was

objectively unreasonable.  Defendant Para counters that she cannot prescribe pain medicine or splint an injury, but her affidavit does not address those issues.  Defendant Para, citing Plaintiff's booking record and her answers to interrogatories, also maintains that Plaintiff was already taking pain medicine and that jail staff can dispense over the counter pain medicine.  The Court does not see where the booking records or interrogatory answers support those assertions.  On the other hand, Plaintiff submits no affidavit and does not say if he asked for pain medicine or say whether he was able to obtain over the counter pain medicine without Defendant Para's involvement.  The record is too undeveloped for a reasonable juror to conclude that Defendant Para acted unreasonably by limiting her involvement to telling correctional officers that Plaintiff needed emergency room services.

In sum, on this record, jail officials were responsible for arranging trips to the emergency room.  The delay in making those arrangements for Plaintiff is, therefore, attributable to the jail officials, not to Defendant Para.

**It is ordered that Defendant Para's motion for summary judgment is GRANTED.  [46.]  The action against Defendant Para is dismissed with prejudice on the merits.  The clerk is directed to enter judgment and to close this case.**

**ENTERED:   July 21, 2020**

**FOR THE COURT:**                    ___/s/ *Richard Mills*
RICHARD MILLS
UNITED STATES DISTRICT JUDGE